IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MILTON A. CARTER,              *
                               *
     Plaintiff,                *     CIVIL ACTION NO. 13-00377-B
                               *
vs.                            *
                               *
CAROLYN W. COLVIN,             *
Commissioner of Social Security,*
                               *
     Defendant.                *

## ORDER

Plaintiff Milton A. Carter (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq*. On April 11, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.  Procedural History

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on June 25, 2010.  (Tr. at 78-79, 154, 158). Plaintiff alleged that he has been disabled since September 15, 2008, due to degenerative joint disease, back and knee pain, and post traumatic stress disorder.  (Id. at 180, 184).  Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Katie H. Pierce (hereinafter "ALJ") on December 13, 2011.  (Id. at 47).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims.  (Id. at 53).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 59).  On January 20, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 42).  After considering additional information, the Appeals Council denied Plaintiff's request for review on June 5, 2013.  (Id. at 1).  The parties waived oral argument (Doc. 17), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> Whether the ALJ erred in not giving "controlling weight" to the opinions of Plaintiff's treating psychiatrist?

III. **Factual Background**

Plaintiff was born on August 21, 1977, and was thirty-four years of age at the time of his administrative hearing on December 13, 2011. (Tr. 47, 53). Plaintiff testified that he went through the twelfth grade in school and served in the military from 1997 to 2000. (Id. at 53-54). Plaintiff further testified that he worked as an electrical helper and a laborer from 2007 to 2008, and that he last worked in November 2009 as a cable television installer. (Id. at 53, 185).

According to Plaintiff, he lives alone, although sometimes, his three-year-old son stays with him. (Id. at 56). Plaintiff reported that he is able to care for his personal needs and that his mother and his son's mother assist him with preparing meals and performing other household chores. (Id. at 56, 198). Plaintiff also reported that he is able to shop and go to church. (Id. at 199, 201-02). According to Plaintiff, he does not have any bills and does not have a bank account, but he is able to count change. (Id. at 201-02).

Plaintiff testified that he is in treatment for alcohol and drug abuse and that he has been in remission since January 2010. (Id. at 54-55). Plaintiff listed his medications as Motrin (for pain), Paxil (for depression), Trazadone (for sleep), and a muscle relaxer. (Id. at 187).

IV.  **Analysis**

A.  **Standard of Review**

In reviewing claims brought under the Act, this Court's
role is a limited one.  The Court's review is limited to
determining 1) whether the decision of the Secretary is
supported by substantial evidence and 2) whether the correct
legal standards were applied.[1]  Martin v. Sullivan, 894 F.2d
1520, 1529 (11th Cir. 1990).  A court may not decide the facts
anew, reweigh the evidence, or substitute its judgment for that
of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th
Cir. 1986).  The Commissioner's findings of fact must be
affirmed if they are based upon substantial evidence.  Brown v.
Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.
Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla, but
less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to
support a conclusion.").  In determining whether substantial
evidence exists, a court must view the record as a whole, taking
into account evidence favorable, as well as unfavorable, to the
Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131
(11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4

---

[1] This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

4

(S.D. Ala. June 14, 1999).

## B.  **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[2] 20 C.F.R.

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 15, 2008, his alleged onset date and that Plaintiff has the severe impairments of post traumatic stress disorder ("PTSD"), major depressive disorder ("MDD"), osteoarthritis of the knees, and cocaine, cannabis, and alcohol dependence. (Tr. 20-21). In addition, the ALJ determined that, taking into account Plaintiff's substance use disorders, his impairments meet sections 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 21).

The ALJ found that Plaintiff was credible concerning the following symptoms and limitations: Plaintiff "has exhibited behavioral changes associated with the use of drugs/alcohol, which exacerbates his mental health symptomology and lowers his cognition;" he is prone to recurrent episodes of mental health symptoms and stopped taking his psychotropic medications when using and abusing drugs/alcohol; and he "has been clean and sober since his admission to the VA hospital in June 2010, which

---

claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

is generally consistent with the treatment records." (Id. at 22). The ALJ further found that if Plaintiff stopped the substance abuse, his remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, he would continue to have a severe impairment or combination of impairments. (Id. at 26). However, the ALJ concluded that if Plaintiff stopped the substance abuse, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 27).

In addition, the ALJ found that if Plaintiff stopped the substance abuse, he would have the residual functional capacity to perform a reduced range of medium work, with the following restrictions: he can frequently stoop, kneel, crouch, crawl, balance and climb ramps/stairs and occasionally climb ropes, ladders, and scaffolding. In addition, he can perform simple, routine, repetitive tasks, have brief superficial contact with the public, work in close proximity to others, work independently, maintain attention and concentration for two hours at a time before needing to take a regularly scheduled break or meal, and adapt to minimal changes in the work setting. (Id. at 29).

Utilizing the testimony of a VE, the ALJ determined that if

Plaintiff stopped the substance abuse, he would be unable to perform past relevant work given his RFC. (Id. at 39). The ALJ again relied upon the testimony of the VE to conclude that if Plaintiff discontinued his substance abuse, considering his residual functional capacity for a range of medium work, as well as his age, education and work experience, there are other jobs existing in the national economy that he is able to perform, such as "hand packer," "cloth tearer," "laborer," and "drier attendant," all of which are classified as medium and unskilled. (Id. at 40). The ALJ concluded that Plaintiff's substance abuse is a contributing factor material to the determination of disability and that Plaintiff would not be disabled if he stopped the substance abuse. Accordingly, the ALJ determined that Plaintiff is not disabled. (Id. at 41).

In determining whether Plaintiff met any Listing, the ALJ made the following relevant findings:

> **4. The claimant's mental impairments, including the substance use disorders, meet listings 12.04, 12.06 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).**
>
> The "paragraph A" criteria are satisfied because the claimant has had behavioral changes associated with regular use of substances that affect the central nervous system. . . . .
>
> On July 28, 2011, Douglas Ewing, MD, the claimant's treating psychiatrist, completed a Mental Residual Functional Capacity (MRFC)

Questionnaire, and found that the claimant had the following limitations: marked restriction of activities of daily living; marked degree of difficulty maintaining social functioning; frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely and appropriate manner; and repeated (3) expected episodes of decompensation in work or work-like settings. . . . Dr. Ewing further noted that based on his evaluation of the claimant's mental status, the claimant has marked limitation in the ability to understand, carry out, and remember instructions; marked limitation in the ability to respond appropriately to supervision; extreme limitation in the ability to respond appropriately to co-workers; extreme limitation in the ability to respond appropriately to customary work pressures; marked limitation in the ability to perform simple tasks; marked limitation in the ability to perform repetitive tasks; and marked limitation in the ability to complete work related activities in the normal workday or work week. Dr. Ewing further reported that these limitations can be expected to last greater than 12 months. Dr. Ewing indicated that the claimant's alcohol/substance use is material to the functional restrictions listing in this form, meaning the claimant would not have the same restrictions if he stopped alcohol/substance abuse. (Exhibit 8F).

In activities of daily living, the claimant has marked restriction. . . . The claimant reported that he did not prepare food or do household chores. He said he rarely goes outside, and cannot go out alone. He shops for snacks weekly for about 30 minutes at a time. He watches television sometimes during the day. (Exhibit 5E).

In social functioning, the claimant has marked difficulties. . . . The claimant has had problems isolating himself from others.

He goes to church and to doctor appointments when taken. He does not handle stress well, as he gets angry, irritable, and depressed. The claimant completed a Drug And Alcohol Questionnaire on July 19, 2010 and said he has not used alcohol or drugs since June 28, 2010. The claimant reported that drinking or drug use causes problems in his ability to socialize with family, friends or others in that it causes isolation from family, anger and depression. The claimant reported that at the time he completed this Questionnaire, he was an inpatient at the VA hospital in Biloxi in a treatment program since June 28, 2010. (Exhibit 6E).

With regard to concentration, persistence or pace, the claimant has marked difficulties. . . . The claimant needs reminders to take care of personal needs/grooming, to take medication and to go places. He said he does not prepare meals because he is unable to focus. He does not drive because he is not able to concentrate to drive. He can count change, but does not have bills or a bank account. He does not finish what he starts. He cannot follow written instructions; but he reported being partially able to follow spoken instructions. (Exhibit 5E).

As for episodes of decompensation, the claimant has experienced repeated episodes of decompensation. (Exhibit 8F). The claimant has been admitted to the VA hospital for treatment of his substance abuse and PTSD in 2003 and 2010. (Exhibits 1F and 2F).

Because the claimant's mental impairments, including the substance use disorders, cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are satisfied. . . .

The claimant was treated in 2003 in a 28-day

drug and alcohol program. The claimant saw Huiping Pei, MD, an internist, and John B. Howell, MD, an internist, on June 9, 2009, for primary care. At that time, it was noted that this was his first follow-up visit since 2004. Dr. Howell assessed the claimant with depression, followed by psychiatry. The claimant underwent a mental status examination with Willie F. King, Jr., MC, an addiction therapist, on August 4, 2009. Mr. King recommended biweekly relapse prevention group therapy sessions and Alcoholics Anonymous (AA) meetings. (Exhibit 1F).

The claimant saw Dr. Ewing on April 9, 2010, for a follow-up of PTSD. Dr. Ewing noted the claimant said he had not been taking his prescribed psychotropic medications. The claimant said he took the medications for 1-2 weeks, and had a positive effect while on the medications. . . . . (Exhibit 1F).

The claimant tested positive for cocaine and cannabis on May 5, 2010 and June 28, 2010. On June 29, 2010, the claimant was evaluated by William G. Reasor, III, CRNP, at his admission to the psychosocial residential rehabilitation treatment program (PRRTP) to facilitate participation in the substance abuse residential rehabilitation treatment program (SARRTP). The claimant presented with a chief complaint of alcohol, marijuana and cocaine dependency. The claimant reported that he started drinking at age 20; and his longest period of sobriety had been 6 months. He said he last used alcohol June 20, 2010. He reported cocaine use since 2002, with last usage 2-3 weeks ago. His longest period of sobriety had been 3-6 months; and he reported using twice a month. The claimant also reported cannabis use for 10-12 years. He reported daily usages, with last usage on June 27, 2010; and his longest period of sobriety has been three months. The psychiatric exam showed claimant was alert and oriented. He had good judgment

and insight, normal mood and affect and intact recent and remote history. The claimant was fully functional in all activities of daily living. Mr. Reasor diagnosed the claimant with polysubstance dependency and depression. At that time, the claimant had no service-connected disabilities. The claimant reported that he first took ecstasy in 1998; and he started suffering from depression and anxiety in 1998 and psychosis in 1999. The claimant reported that he worked as a cable-television installer from July-November 2009, and was laid off from this job. The claimant told the social worker at the VA on June 29, 2010, that "If I am mentally able to work, I will." While hospitalized for substance abuse treatment, the claimant attended lectures and group therapy sessions. (Exhibit 1F).

The claimant was hospitalized again from August 9, 2010-October 1, 2010, for the PTSD intensive outpatient program, and had discharge diagnoses including PTSD, tobacco dependency, polysubstance dependency in early remission, obesity and hyperlipidemia. Mr. Reasor noted the claimant was stable at discharge. The claimant was noted to learn a variety of skills related to emotional regulation and relaxation skills. He was quiet during most group sessions. The claimant had a bright mood and affect upon discharge. (Exhibit 7F).

The claimant underwent an intensive outpatient psychological assessment on September 13, 2010, with Clinton W. Martin, Jr., PhD. The claimant reported having several friends until after his military experience when he began isolating and socially withdrawing. The claimant expressed interest in returning to school for additional training after he becomes more in control of his mood and PTSD symptoms. The claimant reported problems "grasping reality" and hearing voices. He had

suspicions of being followed and experiences significant sleep disturbance. The diagnosis "psychotic disorder, not otherwise specified (NOS)" was added to his problem list in 2004, after he reported the experience of hearing sounds that sounded like voices. He reported occasional feelings of helplessness and fear, recurrent intrusive recollections, recurrent nightmares, recurring flashbacks, and intense distress in the presence of his trigger cues. He was then taking two Trazodone nightly and Sertraline daily. The claimant acknowledged that his tendency to self-medicate made it difficult for him to do well at work. He reported that his substance use creates conflict in his relationship with his fiancée, as she does not approve of his use and tendency to isolate when using. During the mental status examination, he was alert and oriented. He was casually dressed and appropriately groomed. Speech was normal in rate and rhythm. Dr. Martin noted the claimant reported impaired concentration, memory and attention; but he did not appear to be distracted. Based on the evaluation, Dr. Martin said the claimant was experiencing a number of symptoms related to substance dependence, PTSD and depression. The symptoms cause clinically significant distress and impairment in his social and occupational functioning as well as decrease in his overall quality of life. Given this, Dr. Martin diagnosed the claimant with PTSD; depressive disorder NOS; cannabis dependence in early full remission; cocaine dependence in early full remission; and alcohol dependence in early full remission. Dr. Martin said the claimant's PTSD and depression would be the clinical focus of his participation in the PTSD intensive outpatient program (IOP). However, he would be given the opportunity for continued substance abuse treatment. (Exhibit 2F). . . .

The claimant saw Dr. Ewing on February 24,

2011, and reported that he had been taking his psychotropic medications as prescribed. He reported better sleep with the change from Abilify to Quetiapine, and the increase in his selective serotonin reuptake inhibitor (SSRI) to 250 mg per day had resulted in increased ability to "control my moods . . . keeping pretty tranquil." He reported a minimal morning "hangover" to his medication. He said he was having several nightmares per week, and was still trying to isolate and avoiding to minimize arousal symptoms. During the mental status examination, his mood was reported as up and down; and his affect was subdued. His speech was normal in rate, volume and productivity. Dr. Ewing assessed him with PTSD. (Exhibit 7F).

The claimant saw Mr. King on March 22, 2011, and denied any symptoms associated with the present regimen of psychiatric medications; and he did not report any problems or side effects. However, the claimant admitted that he was non-compliant with taking his medications, and had not refilled some of his medications in over 2 months. He admitted he relapsed on January 15, 2011, and smoked cannabis; however, he said he has not used alcohol since June 2010, and denied using any form of cocaine. During the mental status examination, his mood appeared mildly depressed with congruent affect. (Exhibit 7F). . . .

Based on the cumulative evidence of record, the undersigned finds that, when the claimant's substance abuse is considered, he meets the criteria of Listings 12.04, 12.06, and 12.09. This conclusion is supported by the record evidence of the claimant's long-standing history of drug and alcohol abuse and the information contained in the claimant's mental health treatment records. Great weight is given to the MRFC Questionnaire completed by Dr. Ewing and Mr. King, the claimant's addiction therapist, in

Exhibit 8F. Dr. Ewing indicated that the claimant's alcohol/substance use is material to the functional restrictions listing in this form, meaning the claimant would not have the same restrictions if he stopped alcohol/substance abuse. The undersigned gives great weight to the treatment records from the VA, which document that the claimant is prone to recurrent episodes of depression and psychotic symptoms when using and abusing drugs and alcohol. When the claimant was discharged on October 1, 2010, he had been clean and sober since late June. He had a bright mood and affect at that time. (Exhibit 7F). When the claimant saw Dr. Ewing in follow up visits, he reported symptom improvement with medication compliance and abstinence from drugs and alcohol. (Exhibits 7F and 9F). On October 3, 2011, it was noted that the claimant has been staying off drugs and drinking for 6 months. He reported some symptom resolution with his present regimen of psychiatric medications with no reported problem with side effects. (Exhibit 9F). The claimant had a home visit with a social worker on November 17, 2011. The claimant said he was still isolating himself, but was happy with his family, and enjoying living in his apartment. (Exhibit 10F). . . .

**5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments. . . .**

**6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)**

and 416.920(d)).[3]

. . . In terms of the "paragraph B" criteria, the claimant would have mild restriction in activities of daily living if the substance use was stopped. The claimant reported needing help with personal care, does not prepare any meals or do any household chores. The claimant said he goes with someone to shop, and watches television sometimes. (Exhibit 5E). On October 4, 2010, Dr. Kovacs noted the claimant said he was temporarily living with his mother. Dr. Kovacs said the claimant was able to do the activities of daily living without assistance. He cannot drive far; and he gets confused with the directions. His mother does all the household chores, grocery shopping, cooking, laundry and cleaning. His hobbies include fishing. (Exhibit 5F). At the hearing, the claimant said that on a typical day, he gets up, takes his medication and prays. He lives by himself currently; but his 3-year-old son lives with him at times. He prepares his own meals and does his laundry; but he sometimes receives help from his mother and sister. He said that sometimes he forgets, or just gets frustrated doing these tasks.

In social functioning, the claimant would have moderate difficulties if the substance use was stopped. The claimant reported that he goes to church. (Exhibit 5E). The claimant told Dr. Kovacs that his social activities include weekly meetings and yard work. The claimant also said he cannot stand to be around a lot of people; and he hardly

---

[3] The ALJ found that Plaintiff's osteoarthritis did not meet section 1.00 of the Medical Listings because "the condition ha[d] not resulted in an inability to ambulate effectively as defined in 1.00B2b." (Tr. 27). Plaintiff does not challenge this or any finding related to his physical impairments. Therefore, the Court's analysis is limited to Plaintiff's mental impairments, including his substance abuse disorders.

goes anywhere because of anxiety in public. (Exhibit 5F).

With regard to concentration, persistence or pace, the claimant would have moderate difficulties if the substance use was stopped. The claimant said he cannot concentrate due to his PTSD. He said he was experiencing nightmares and cannot sleep well. He cannot drive far; and he gets confused with the directions. He can count his money, but cannot balance his checkbook. (Exhibit 5F).

As for episodes of decompensation, the claimant would experience one to two episodes of decompensation if the substance use was stopped. . . .

(Tr. at 21-28).[4]  In addition, in assessing Plaintiff's RFC,

the ALJ made the following relevant findings:

> **7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a reduced range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c), in function by function terms (SSRs 83-10 and 06-8p), with certain non-exertional restrictions associated with that level of exertion. The claimant's specific physical capabilities during the period of adjudication have been the ability to frequently stoop, kneel, crouch, crawl, balance and climb ramps/ stairs; and occasionally climb ropes, ladders and scaffolding. The claimant's specific mental capabilities during the period of adjudication have been the ability to perform simple, routine, repetitive tasks**

---

[4] The ALJ also considered Plaintiff's headaches, back pain, hyperlipidemia, obesity, and dental caries and found them to be non-severe. (Tr. 26-27). As noted above, Plaintiff does not challenge this or any finding related to his physical impairments.

**(SRRTs); have brief superficial contact with the public; work in close proximity to others, but would need to work independently; maintain attention and concentration for 2 hours at a time before needing to take a regularly scheduled break or meal; and adapt to minimal changes in the work setting.**

. . . At the hearing, the claimant testified that he goes to classes at the VA 3 times a week in Biloxi for anxiety, suicide and pain management. He reported having transportation issues sometimes; and the records reflect that he was a no-show to multiple appointments. (Exhibits 1F, 2F, 7F and 9F). The VA records reflect no complaints of suicidal ideation during the relevant period of time, although he did relate a suicide attempt while in the military in 1998 by taking 9 Motrin. (Exhibits 1F, 2F, 7F, 9F, and 10F). . . .

The claimant has MDD and PTSD which results in the limitation of his ability to perform SRRTs; have brief superficial contact with the public; work in close proximity to others, but would need to work independently; maintain attention and concentration for 2 hours at a time before needing to take a regularly scheduled break or meal; and adapt to minimal changes in the work setting.

The claimant's drug tests at the VA since he was discharged for his substance abuse treatment have been negative. (Exhibits 2F and 7F). Although the claimant has had some compliance problems with taking his medications, his symptoms are reduced significantly while on his medications as prescribed. . . .

On September 8, 2010, Donald E. Hinton, PhD, a State agency psychological consultant, completed a Psychiatric Review Technique Form (PRTF), and found that the claimant has

the medically determinable impairments of
depressive disorder, PTSD and history of
substance abuse. Dr. Hinton found that the
claimant had the following limitations: mild
restriction of activities of daily living;
moderate difficulties in maintaining social
functioning; moderate difficulties in
maintaining concentration, persistence or
pace; and no episodes of decompensation.
Dr. Hinton noted the claimant has been
treated at the VA since August 2009, for
cocaine dependence, cannabis abuse, alcohol
dependence and PTSD. The claimant attended
inpatient treatment for alcohol and drug
abuse in July 2010. He returned home for a
week, and would be returning for inpatient
PTSD treatment for another month starting
September 9, 2010. Dr. Hinton noted the
claimant's August 11, 2009 inpatient
psychological assessment included diagnoses
of PTSD; depressive disorder, NOS; cannabis
dependence, early full remission; cocaine
dependence, early full remission; and
alcohol dependence, early full remission.
Dr. Hinton stated that with abstinence from
substance abuse and with treatment for PTSD,
significant stability would be expected.
(Exhibit 3F).

Dr. Hinton also completed a Mental Residual
Functional Capacity Assessment, and found
the claimant had the following moderate
limitations: in the ability to understand
and remember detailed instructions; in the
ability to carry out detailed instructions;
the ability to maintain attention and
concentration for extended periods; and in
the ability to interact appropriately with
the general public. Dr. Hinton opined that
the claimant has the ability to understand,
remember and carry out very short and simple
instructions; and maintain attention and
concentration for 2 hour intervals. Dr.
Hinton also stated that routine contact with
the general public should not be a usual job
assignment. (Exhibit 4F).

When the claimant saw Dr. Martin on
September 13, 2010, the claimant expressed
interest in returning to school for
additional training after he becomes more in
control of his mood and PTSD symptoms. . . .
Based on the evaluation, Dr. Martin said the
claimant was experiencing a number of
symptoms related to substance dependence,
PTSD, and depression. The symptoms cause
clinically significant distress and
impairment in his social and occupational
functioning as well as decrease in his
overall quality of life. (Exhibit 2F). . .
.

The claimant saw Dr. Ewing on July 28, 2011,
and reported overall better mood, less
anxiety and more continuous restorative
sleep on Quetiapine 300 mg. He reported no
side effects to medications. . . .

In terms of the claimant's alleged MDD and
PTSD, the record documents that the
claimant's symptoms have been minimized with
compliance with treatment and abstinence
from drugs and alcohol. . . .

As noted above, the MRFC Questionnaire
completed by Dr. Ewing and Mr. King shows
that his substance abuse history is material
to the issue of disability. (Exhibit 8F).
Doctor Hinton stated that with abstinence
from substance use and with treatment for
PTSD, significant stability would be
expected. (Exhibit 3F). This statement
appears to be consistent with the claimant's
recent treatment records, as discussed
above. Additionally, the claimant's prior
work history demonstrates that he has the
ability to perform unskilled work. The
undersigned finds that he is capable of
performing SRRTs; having brief superficial
contact with the public; working in close
proximity to others, but would need to work
independently; maintaining attention and
concentration for 2 hours at a time before
needing to take a regularly scheduled break

or meal; and adapting to minimal changes in the work setting. . . .

As for the opinion evidence, . . . [w]ith regard to the claimant's mental impairments without drug and alcohol abuse, great weight is also given to the findings and opinions of Dr. Hinton in Exhibits 3F and 4F. The undersigned used the ratings assigned by Dr. Hinton in the PRFT to determine the mental residual functional capacity if the claimant stopped substance use, as Dr. Hinton stated that with abstinence from substance use and with treatment for PTSD, significant stability would be expected. . . . The limitations assigned by Dr. Hinton in the Mental Residual Functional Capacity Assessment in Exhibit 4F are generally consistent with the mental residual functional capacity as set forth above.

Great weight is also given to Dr. Ewing's responses in the MRFC Questionnaire in Exhibit 8F, which indicates that the claimant's drug and/or alcohol abuse is material, so it is consistent with this decision. The undersigned also notes that with regard to medication side effects, Dr. Ewing noted the claimant complains of headaches, sweating, easily upset, anger without reason, nervous and cannot perform simple tasks. (Exhibit 8F). However, the treatment records do not report consistent complaints of medication side effects. (Exhibits 2F, 7F and 9F). The undersigned also notes that on February 24, 2011, Dr. Ewing also noted on Axis IV that the claimant was disabled. (Exhibit 7F). According to the DSM-IV, Axis IV is for, ". . . reporting psychosocial and environmental stressors that may affect the diagnosis, treatment and prognosis of mental disorders." Social Security Ruling 96-2p and 96-5p indicate that treating physician opinions on issues reserved to the Commissioner of Social Security are never entitled to controlling weight or special

significance. Since Dr. Ewing's diagnosis in Exhibit 7F concerns an issue (whether the claimant is disabled) reserved to the Commissioner, it cannot be given controlling weight.

The record as a whole reflects that the claimant is capable of performing medium work as set forth above, and that he was not disabled for any 12 month period. There is little to no objective support for the claimant's assertion that his impairments are of disabling severity if substance use stopped.

(Tr. 29-39). The Court now considers the foregoing in light of the record in this case and the issue on appeal.

1. **Issue**

**Whether the ALJ erred in not giving "controlling weight" to the opinions of Plaintiff's treating psychiatrist?**

Plaintiff argues that the ALJ erred in not giving "controlling weight" to the opinions of his treating psychiatrist, Dr. Douglas Ewing, and in failing to articulate the reasons that she rejected Dr. Ewing's opinions. (Doc. 13 at 2, 4). The Commissioner counters that the ALJ adopted most of Dr. Ewing's opinions and assigned them the "greatest weight" and that, to the extent that the ALJ assigned less weight to any of Dr. Ewing's opinions, she articulated her reasons for doing so. (Doc. 15 at 2). Having carefully reviewed the record in this case, the Court finds that the ALJ gave appropriate weight to Dr. Ewing's opinions and that the ALJ's conclusion that

Plaintiff is not disabled is supported by substantial evidence.

As a preliminary matter, the undersigned notes that the applicable regulations provide that, if the ALJ determines that a claimant is disabled, but also makes a finding that substance abuse is involved, the ALJ "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The key factor in this inquiry is whether the claimant would still qualify as disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). The ALJ must evaluate which of the claimant's physical and mental limitations that supported the original disability determination would remain absent drug or alcohol use. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If a claimant would no longer be disabled if he stopped using drugs or alcohol, then the claimant's substance abuse is considered to be a "contributing factor material to the determination of [his] disability," and he has therefore failed to meet his burden and prove that he is disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *See also* <u>Watson v. Colvin</u>, 2013 WL 757626, *2 (M.D. Ala. Feb. 27, 2013)("[a] claimant 'shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addition would (but for this subparagraph) be a contributing factor material to

the Commissioner's determination that the individual is disabled.'")

In this case, the ALJ followed the applicable regulations and first determined, after a review of all the evidence, including the medical records, that Plaintiff is disabled, and that his alcohol/substance abuse is a contributing factor material to the disability finding. The ALJ also discussed the remaining limitations that Plaintiff would experience if the alcohol/substance abuse was not present, formulated Plaintiff's RFC, and concluded that there are jobs in the economy that Plaintiff could perform if his alcohol/substance abuse ceased.

In his brief, Plaintiff does not challenge the ALJ's finding that his alcohol/substance abuse is a contributing factor material to the ALJ's disability finding. Instead, Plaintiff has identified one portion of Dr. Ewing's opinions that he contends the ALJ should have afforded greater weight, *i.e.*, Dr. Ewing's opinions in the Mental RFC Assessment form that dated July 28, 2011 that "Plaintiff has multiple marked limitations including marked restriction of activities of daily living, marked difficulty in maintaining social functioning, frequent estimated deficiencies in concentration, persistence or pace, and frequent expected episodes of decompensation." (Doc. 13 at 4; Tr. 657-58). Plaintiff argues that the ALJ should have afforded these opinions of Dr. Ewing "controlling weight" and

that the ALJ erred in doing so.   (Doc. 13 at 4).   Plaintiff's argument is misplaced.

Generally speaking, "[i]f a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight."[5] Roth v. Astrue, 249 F. Appx. 167, 168 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).   In other words, "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted. . . . A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.   It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2P, 1996 SSR LEXIS 9 at *2, 1996 WL 374188 at *1.

"If the treating physician's opinion is not entitled to controlling weight, we have held that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary."   Roth, 249

---

[5] "Controlling weight" is defined as a medical opinion from a treating source that must be adopted. See SSR 96-2P, 1996 SSR LEXIS 9, *3, 1996 WL 374188, *1 (1996).

F. Appx. at 168 (citations and internal quotation marks omitted); see also Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985) ("An administrative law judge must accord substantial or considerable weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary.") (citations and internal quotation marks omitted). "The requisite 'good cause' for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Id. "[T]he weight afforded a treating doctor's opinion must be specified along with 'any reason for giving it no weight, and failure to do so is reversible error.'" Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

The record in this case shows that the ALJ actually adopted Dr. Ewing's opinions related to Plaintiff's marked limitations in activities of daily living and social functioning, frequent

deficiencies in concentration, persistence or pace and expected
episodes of decompensation and gave them the "greatest weight,"
concluding, based on Dr. Ewing's opinions, that Plaintiff met
the requirements of Listings 12.04, 12.06, and 12.09. (Tr. 21-
22, 25, 39). Plaintiff argues, however, that the opinions were
entitled to "controlling weight," as opposed to the "greatest
weight." This is a distinction without a difference because
regardless of whether the ALJ assigned the opinions the
"greatest weight" or "controlling weight," he adopted the
opinions. Thus, there is no error, and Plaintiff's claim is
without merit.[6]

Furthermore, Plaintiff overlooks the very significant fact
that in the same Mental RFC Assessment form, Dr. Ewing opined
that Plaintiff's alcohol/substance abuse were "material" to the
functional restrictions listed in the form and that Plaintiff
would not have had the same restrictions listed in the form in
the absence of alcohol/substance abuse.[7] (Id. at 658). The ALJ

_____

[6] Even assuming error, Plaintiff has shown no prejudice resulting
from the ALJ's assignment of one weight over the other; thus, it
is harmless. See Battle v. Astrue, 243 Fed. Appx. 514, 522
(11th Cir. 2007) (unpublished) (errors which do not prejudice
the plaintiff are harmless); Wright v. Barnhart, 153 Fed. Appx.
678, 684 (11th Cir. 2005) (errors which would not change the
disability determination are harmless).

[7] On the form, Dr. Ewing was expressly asked, "[d]o you feel that
alcohol/substance abuse is 'immaterial' to the functional
limitations listed in this form (i.e. the patient would still
have the same restrictions irrespective of any alcohol/substance

adopted that opinion of Dr. Ewing as well and gave it the "greatest weight," concluding on that basis that Plaintiff was not disabled. As noted *supra*, Plaintiff has not challenged this finding, which was central to the ALJ's determination that Plaintiff is not disabled if his alcohol/substance abuse is discontinued. Indeed, in addition to Dr. Ewing's opinion regarding the materiality of Plaintiff's alcohol/substance abuse, the ALJ also relied upon the findings of Dr. Hinton, Ph.D., in determining Plaintiff's RFC in the absence of alcohol/substance abuse. (Id. at 31, 38).

Last, the Court notes that Plaintiff makes a general statement in his brief that, "[t]he ALJ reversibly erred in giving little weight to the opinion of the Plaintiff's treating physicians." (Doc. 13 at 2). Other than the opinions of Dr. Ewing discussed above (to which the ALJ gave the "greatest weight"), Plaintiff fails to specify the opinion[s] of any of his other treating physicians to which he is referring. Therefore, any such argument by Plaintiff is waived.[8] See Access

abuse)?" Dr. Ewing clearly opined that the alcohol/substance abuse was material. (Tr. 658).

[8] Although all further assignments of error are waived, for purposes of clarity, the Court notes that the ALJ declined to give controlling weight to Dr. Ewing's diagnosis in his treatment notes dated February 24, 2011, under "Axis IV," that Plaintiff was "disabled." (Tr. 434). Any suggestion that the ALJ erred in that regard would fail, as the law is clear that a conclusion as to whether an individual is disabled or has the

Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("the law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **25th** day of **September, 2014.**

---

ability to work is a legal rather than medical opinion and "is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Williams, 2009 WL 413541 at *2 (citations omitted); see also SSR 96-5p, 1996 SSR LEXIS 2, *1, 1996 WL 374183, at * 1-2 (July 2, 1996) (a physician's opinion on an issue reserved to the Commissioner of Social Security, such as whether an individual is disabled, is never entitled to controlling weight or special significance).

Likewise, the Court notes that the ALJ discounted Dr. Ewing's statement on the Mental RFC Assessment form that Plaintiff "complains" of medication side effects. (Tr. 658). Any suggestion of error related to that determination would also fail given that the statement is merely a notation of Plaintiff's subjective complaints on that date, not an "opinion" by Dr. Ewing. In any event, the notation is inconsistent with Plaintiff's treatment records, which do not reflect consistent complaints by Plaintiff regarding any medication side effects. (Id. at 33, 39, 417, 433, 450, 464, 679, 716).

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE